Good morning. Anthony Rodriguez for the appellant, Rancho de Calistoga. There are a couple of points that I'd like to emphasize. The first, and probably most important, is the procedural posture of this case, in addition to the fact that it's at the pleading stage. I think it's critical to the case that this is not a facial challenge. The park owner concedes that the ordinance is valid on its face and that preventing excessive and coercive rents are valid public purposes. However, the important point about the ordinance is that it allows for rent increases that are quote-unquote reasonable under the circumstances, and the burden of proof is on the park owner to show, by a preponderance of the evidence, that the requested rent increase is reasonable under the circumstances. And in this case, that's exactly what happened. There was an actual hearing. The park owner came in, submitted evidence. The tenant submitted evidence. There was cross-examination, and there were briefs. And the park owner made numerous legal arguments, including the ones that are before this Court today, that the denial of this particular rent increase would not violate any public purpose whatsoever and that it would therefore result in a private taking, or if it wasn't a private taking, it would be a regulatory taking. And there were also due process and equal protection arguments made. And in the park owner's opinion, this case should be treated the same as a fair return case would be treated under rent control, essentially, that if you go before the local rent control board and argue that you're not making a fair return on investment, you don't need to show that the ordinance was unconstitutional. You don't need to show that the ordinance wasn't working. There's no debate as to the wisdom of rent control or anything like that. It's just a simple question of is the ordinance being applied in a way that violates your constitutional rights because the rents have been kept so low that you're no longer making a fair return, or maybe you were never making a fair return. And by fair return, the constitutional limitation on that is regulatory taking. Is that right? Well, you know. I mean, that's why it would be unconstitutional. Well, it would be. Clearly you have a right, in my opinion, to a fair return on investment under, you know, California and U.S. Supreme Court precedent. Well, when you say that, under what constitutional provision do you say that? Well. I mean, because fair return is not in the Constitution. Exactly. And so, you know, this is a — I've been doing rent control for 30 years, and I have never seen a case that clearly defines where the right to a fair return comes from. Does it come from the due process clause or the takings clause? The courts are kind of mixed on it. So when I do a fair return case, I plead it that it's under one or both. I'm not really sure. And I've had that debate with other judges, and I've never seen a court of appeal decision say it definitely comes from the due process clause or it definitely comes from the takings clause. So it's one or the other. There's no question about that. One of the points you start out on is really kind of what's the procedural posture of the case and how do we get up here. I would appreciate it if you would address the ripeness issue in terms of, you know, the district court dismissed the regulatory taking as an unright. Right. Okay. Do you want me to do that right now? Please. Okay. So obviously under Williamson County, the general rule is that you have to exhaust your administrative remedies and any State court remedies that may exist. There's two prongs. You have to satisfy them both. But there is a futility exception. And since the last time this issue was before the Ninth Circuit, the Becerra case came down in the State courts. And in Becerra, I was the attorney in that case, and the case was essentially exactly the same as this one. The parkrunner made the exact same arguments before the rent control board, had the same witnesses, everything was the same, trying to put forth either a private taking or a Penn Central regulatory taking claim. And so after the hearing officer denied the rent increase, we went to the State court and it got up to the Court of Appeal, and we only argued under the California Constitution. And we showed that, like in Guggenheim, when this court indicated that if you owned a park prior to the enactment of rent control, you may have a reasonable investment expectation that you can charge a fair rent, but that if you purchased it with rent control, you didn't have that expectation. And they found that that was the primary reason why those parkrunners couldn't proceed on their facial challenge as a regulatory taking claim. But then Becerra came out, and in Becerra, we raised all of the arguments under the California Constitution. We raised regulatory taking, private taking, equal protection, and due process, and that court found that there was no cause of action under any of those claims, even for a parkowner that purchased before rent control. So it's very different than what this court ruled in Guggenheim. So in my mind, that makes it futile, because now we have a public decision saying you can't proceed in State court. And I still have two cases. So what's the status of the State court action in this case? Have you stipulated the judgment against you? No. It's pending in the court of appeal right now. So why should we predict what will happen in the California judiciary, particularly since it is just the court of appeal? And as we know well, being the court of appeal is not always the last word. Well, that's true. You know, in Becerra, we filed a petition to the California Supreme Court, and they denied it. So, you know, I guess that's another question that's kind of unresolved in my mind under Williamson. How far do you really have to go? Do you have to go to the California Supreme Court every time? I'm assuming that you do, so that's what I'm doing. Let me ask this as part of that same question about Williamson County and ripeness. What is the worst thing that could possibly happen to you in your California litigation? That the court would rule against me on every single issue. And how much would that then hurt your client financially? That is to say, what would the rate be, then, if you get ruled against on every issue? What would what be? Pardon me? The rate. What would the rate be? What would your clients be getting in terms of return? What would the rental they would be getting if you lose on every issue in the California court? If I understand your question, they'd be getting zero. They wouldn't get anything. Well, they're getting something. The question is what kind of an increase or what? I mean, they're obviously getting some rent. So what rent would they be getting if you lose on every issue in the California court? The same rent that they're charging today. Okay. So if that's — if we were to conclude just hypothetically that that's not a constitutional violation, why do we need to wait? I'm not following you at all. Well, the only reason to wait under Williamson County — Williamson County wasn't a rate case. As you know, it was a zoning case. Right. The same principle might apply. The only reason to wait under Williamson County is because there's a possibility, depending upon what the State proceeding does, that the rate charged or the zoning imposed will or will not be unconstitutional. So my question is, what if we were to decide even if you lose on everything, the rental that you're entitled to does not violate the Constitution, why do we need to wait? Well, I'm still not really — I think that there's a difference between the Guggenheim type regulatory taking and a fair return on investment. You know, I think what Guggenheim and Penn Central are saying is that even — regardless of whether you're making a fair return, you still may have a regulatory taking if you're required to bear a burden that really, in all fairness, society itself should bear. Yeah. No, no. You aren't understanding my question, but I'll pass on it. But you don't want us to wait. You're arguing that we shouldn't wait because of some Williamson doctrine. Well, I'm arguing you shouldn't wait because of — Because of utility. Because of utility, because of the Becero case, which basically is a closed door in California. Let me just play that out, though. One reason we wouldn't wait is we could say, a la Guggenheim, that it would be futile, and therefore we basically prudentially sweep away the ripeness, correct? And we decide it, right? But then we're in a situation where we have one California court of appeal case which says something, and to rule in your favor, would we basically have to step out and take the opposite position? Well — I'm just asking. I'm trying to, like, trace the line about how we would get to where you want to go. You know, I guess it's how you interpret the futility exception. What do you need in order to be convinced that it's futile? I'm pretty much convinced it's futile. And it's, you know, I feel when I'm representing other clients going into state court, this is kind of a waste of time. And in fact, the briefing that I've done since Becero, I just say in the brief, here's Becero, says we can't do this. But under Williamson County, we have to go through the California state procedure. So I kind of apologize for wasting everybody's time. But we're going to do it, even though Becero is staring us right in the face. And we're going to, you know, go through the Superior Court, the Court of Appeal, and the Supreme Court, just so we can exhaust the remedies and then come over to the federal courts. And in fact, that's what happened in Becero. We finished Becero. We did the petition to the California Supreme Court. And now we're back in federal court trying to pursue the regulatory taking claim in federal court. That's exactly what we're doing. And that case is pending before the Ninth Circuit right now. It's fully briefed. But, you know, it's trailing this one. It's a few months behind. But what if there's a different, I mean, here's where we're kind of, all of us in the same procedural conundrum. I understand where you'd like us to go. But what if there's a different California Court of Appeals decision that isn't Becero? Well, you know, I guess that could happen. You know, it's speculation. But that could happen. It certainly could happen. Or maybe it will be the same, and then maybe the California Supreme Court will again not take the case. But wouldn't that make, you know, it doesn't make you any happier, but it would certainly make the case much stronger that it is futile. Yeah. Because we're having a single case. Right. And one of the problems in proceeding in California, in addition to Becero, is that all of the language that benefit the park owner's point of view are the federal cases, especially the Guggenheim case. That's what kind of opens the door to these cases. And I can't even cite that case in the state courts, because if they do, then they'll say I argued my federal claims in state court, and I'll never have a chance to succeed in federal court. So we don't mention Guggenheim. Right, I understand. So, you know, that's the conundrum that I'm in. I totally understand. And I'm a little hesitant to get as far into the weeds as I'm about to get. I'm assuming you're litigating in California Supreme Court based upon Federal and State constitutional claims. No. Just State? Just State, and we did it in England Reservation. Because you don't want to waive, you don't want to, is that what you're trying to do, not take Federal claims in State court? But I assume the State court is jurisdictionally competent to hear a Federal claim? Yeah, sure, they could. Then how do you get out from under Santa Rima Hotel once the California court has ruled? Because then you've got res judicata not only as to what was decided, but what could have been decided, and then you're done. Right. And that's the very issue that's before the Ninth Circuit in Becero Federal. And our answer, which may or may not be correct, but this is our position, is that in California, under rent control cases, under clearly established law, they apply the substantial evidence test. But in Federal court, under the bond, Bureau of Bond-Aven case, I think it's called, the U.S. Supreme Court case, it says that you have a right to judicial review under an independent review standard. No, but the Santa Rima Hotel is a different question. Well, Santa Rima was basically. Now, let me tell you how I understand Santa Rima Hotel, and then you can tell me I'm wrong. All right. But as I understand Santa Rima Hotel, the Federal question was saved out and not presented to the State court. Right. The United States Supreme Court says, however, the Federal question could have been presented, and because res judicata law in California is such that you get res judicata in the sense of claim preclusion as to claims that were brought and claims that could have been brought. The fact that you could have brought the Federal claim means you are claim precluded in Federal court once you get a final decision out of State court. But California law regarding res judicata and collateral estoppel also say that when the standard of review is different, then res judicata and collateral estoppel don't apply. And that's. No, you're not. You're not taking my point, but that's okay. No, I understand what you're saying exactly. But that's the issue before the Ninth Circuit in this other, in Becero Federal, is that very issue. Is it res judicata and or collateral estoppel because, you know, it's like the OJ Simpson case. You know, he's acquitted of murder in State court, but then he can be sued because there's different standard of review for on the civil action. And so, you know, anyway, I mean, I briefed it, the other sides briefed it, and we'll get a decision, I'm sure, in the next year or two on that issue. But, you know, that's really not part of this case because we're not at that point yet. All right. Okay. Thank you. All right. We'll hear from the other side. I assume you want to save some time for rebuttal. Sure. Thank you. Good morning. Amy Hoyt, appearing on behalf of the City of Calistoga. I agree that we should look at the procedural posture of the case, and it's important to look at what claims are pled. With respect to the as-applied claims that we have here, we have a regulatory take. Could you speak up a little? Of course. We have a regulatory takings, a private taking, a due process, and equal protection. It sounded like from the Court's questions that you were interested in the regulatory taking ripeness issue, so I will move to that. I have a difference of opinion with counsel with respect to PASARO. I don't agree to it as saying that it completely forecloses any case or cause of action in State court. What it says is that because in that case the park owner had conceded that it was receiving a fair return on investment, then there was no violation under State law of the due process or equal or takings case. So I think that it's premature at this point to say that California law is futile, especially given the overwhelming number of cases from this circuit that have said it is an adequate remedy, and also I don't think PASARO says what the park owner says it says. Sotomayor, I thought it was also making a distinction of the timing of purchase. Correct? The timing of the purchase was an issue there, yes. In other words, the timing of purchase there was before the regulation? I believe it was, which is the same here. But nonetheless, the plaintiff in this case is not conceding that they're making a fair return on investment, which the plaintiff in PASARO did concede. I think that's a key difference. I'd like to talk a minute about the theory of liability that the plaintiff, the park owner, is alleging here. It's this market rent theory, and it is basically, in our view, a circular reasoning. It says that market rent is the most probable rent that a property should bring in an open and competitive market without rent control. The park owner says that because it is negotiated under an arm's length transaction, it necessarily is not excessive, not exploitative, and not the result of a monopoly. Here, the park owner has requested a rent that is slightly below the market rent, and so the park owner says that because it is therefore not excessive, not monopolistic, and not exploitative. And as a result, applying it to the park owner violates its constitutional rights. I believe there's a circularity in that argument, and it essentially is a rehashing of the substantially advances argument that was rejected in Lingle. With respect to the private takings case, Kelo is dispositive on this point. It talks about the fact that there's a highly deferential standard of review. It specifically mentions that simply because a private property or a private party could be benefited by an ordinance, that does not mean that it's for a private purpose. Kelo also states that where the purpose is legitimate and the means are not irrational, debates over the wisdom or the effectiveness of the regulation are not allowed in Federal court. And we have Ninth Circuit precedent in both the MHC financing case and the Action Apartment case that rejected very similar arguments and found that there was not a private taking. With respect to the pretext argument, I would simply point out that all of the cases that the park owner rely upon are completely irrelevant or inapplicable to what we have here. There's no allegations here that are even remotely similar to those that were in the 99-cent case, the Cottonwood case, and the Amendarese case. With respect to due process and equal protection, the district court found that those were subsumed in the takings cause of action because the claim basically was such that the ordinance causes below-market rent, therefore the property value is decreased, and therefore the rental income is decreased. In the Colony Cove case, this circuit found that that is basically the same thing as a takings challenge, so therefore it's subsumed. I realize that the case law on subsumed is, you know, kind of all over the map, so even if it's not subsumed, there is Ninth Circuit precedent from this Court establishing that the due process claims and the equal protection claims are barred as a matter of law. Those would be the Pennell case, that's a Supreme Court case, the equity lifestyle case, and the MHC financing case. The ordinance here is intended to stabilize park spaces, prevent exploitation of the small amount of park spaces, prevent excessive rent increases, and ensure fair return. The courts have repeatedly found those to be legitimate purposes and have found that rent control is a rational way to further those purposes. Unless the Court has any questions, I think that it's been fully briefed on these issues, and the Ninth Circuit precedent and Supreme Court precedent firmly establishes that the park owner in this case has not pled facts sufficient to state a cause of action for private takings, due process, equal protection, and regulatory taking. Thank you. Any questions? Thank you. You have some time for rebuttal, and I do have a question. I'm just trying to figure out, if we were to view the case as not needing to exhaust this ripeness requirement like the Guggenheim situation, are you asking for a legal ruling from this Court, or are you asking for a remand? Well, we're asking that it be remanded and that either the district court or even the hearing officer, because the hearing officer ducked the issue. He punted and said the Court should decide this, which I don't think is appropriate. I think that the hearing officer should be the one who takes the first crack at it. He should make a ruling, and then that can be, you know, if somebody disagrees with it, then they can go up to the district court. You know, to me, that makes the most sense as to how it should normally work. But he punted, and it kind of threw this case into chaos. But I just wanted to briefly touch on the private taking. You know, we are not challenging the ordinance. We are challenging the decision of the hearing officer. And so this is an as-applied case. So all of these cases that talk about the deference given to the legislature in adopting the ordinance don't apply. We're not contesting that the ordinance is unconstitutional. We're just saying that the hearing officer has applied it in a manner that results in these various constitutional violations. I don't understand. If the question is whether what's done is public, satisfies the public use requirement, how is that different for an as-applied basis? I mean, the purpose of the ordinance is going to be the same. The ordinance wasn't adopted for individual properties. How is the public use issue different? Well, because the enforcement agency can abuse its power and give something to somebody just because they want to. As we said in our brief, the hearing officer, you know, let's say his mother was a tenant at the park and he gave her a super discount on rent. And so why did he do that? Not because of any public purpose, but because he wanted to, because it was his mother. So you can have an ordinance that's completely valid on its face and still have a private taking as applied, just as if there were. But you're not arguing favoritism like that. This isn't a case of somebody saying, well, I really like the person that's there, so I'm going to screw the owner of that property and give the tenant a break. You're complaining about the basic economics, and the basic economics are what lie behind the ordinance. No, we're saying that there was a trial before the hearing officer, and we put on evidence to show that this particular rent increase is reasonable under the circumstances because it does not result. That's a different question. The question here is whether this is public use. And I don't understand how you're not being happy with the calculation speaks to whether or not there's a public benefit from the law that's being applied. That's what we're arguing, that there is no public benefit. What is the public benefit? Well, you proposed as an alternative, or your client did, making a direct public subsidy in the same amount to the tenants. Right. Is that something the city could have enacted? No, they couldn't have. It would have violated the California Constitution. It would have been a gift. Well, we don't care about the California Constitution. For our purposes, the issues you're posing to us, would that have been unlawful? I think it is unlawful to give people other people's money for no reason. Well, there are a whole lot of housing subsidy programs out there funded by the Federal and State and local governments at every level. Are those all unconstitutional for some reason? There's a reason why. Those people have income qualifications. That's the public purpose, to help poor people. How about the GI Bill? No income qualification there. My parents got their first house because of a loan from the predecessor to the VA. I would guess that the public purpose is to encourage people to go into the military or to reward people that have been in the military. And that's a judgment made by the legislature. It seems to me that it's pretty hard to distinguish between challenging the statute and as applied challenge, where there's nothing raised here other than the same public purpose issues that really would be in a facial challenge. I'm having trouble understanding what you're carving out that's different in your as applied challenge. Well, it's exactly, as I said, why I believe it should be treated as like a fair return case. You can have an ordinance that says you have a constitutional right to a fair return. So you go in and you say a fair return is 9 percent. The hearing officer says, no, I'm going to give you 3 percent. So you come to court and say, yeah, I'm not challenging the ordinance on its face. It's clear that, you know, they gave me the right to a fair return, but they applied it in a way that didn't really give me the fair return. So here we're saying — And the reason they didn't in your view is because they're giving people money. They're giving people money for no reason. If you say that the — But if the public purpose — Right. The public purpose is to prevent, let's say, coercion. That's one of the big ones in this ordinance, that if your rents get so high, the people have no choice. So we're saying this particular rent, we submitted evidence showing this particular rent, 625, is not coercive. You can't coerce somebody if the rent is below market and non-monopolistic. And there's that diagram in our brief that we printed that shows the negative leasehold and the positive leasehold. And all of these residents have a positive leasehold. They would have to have a negative leasehold for the park owner to be able to coerce something out of them. I mean, that's the evidence. The hearing officer can accept it or reject it, and the tenants can rebut it. But somebody needs to make a decision on the evidence, and that's what never happened in this case. Why? Frankly, it seems to me you're trying to take a fair return argument — No. — but pull it into a private takings label so you're not limited to whatever Penn Central tells us a fair return is. You're trying to make us adopt your client's view of what a proper market price is as a definition of what's a public use. And I don't know of any authority that extends the public use doctrine to that kind of level. Well, when the hearing officer says, I'm not going to give you this rent increase because the purpose of the ordinance is to prevent coercion, and then we say, yeah, but this rent increase doesn't result in any coercion, so there's no correlation between the public purpose and the decision. It becomes pretext at that point. He's using a purpose, a false purpose. You know, it's a legitimate purpose to prevent coercion, but he's using it to deny a rent increase that has nothing to do with coercion. So that's the pretext. So if the standard on the ordinance is what's reasonable under the circumstances, how can you let the hearing officer use a false pretext to deny the rent increase? That's all we're saying. Okay. I think we've got your argument. We've given you an extra six minutes. All right. Thank you. I'd like to thank both counsel for your argument this morning. And the case of Rancho de Calistoga and City of Calistoga is submitted.
judges: McKeown, Fletcher, Clifton